**Hearing Date & Time:  June 30, 2015 at 10:00 a.m.**
**Objection Deadline:  June 22, 2015**

HERRICK, FEINSTEIN LLP
*Attorneys for Grand Pacific Finance Corp.*
Stephen B. Selbst
Hanh V. Huynh
Two Park Avenue
New York, NY  10016
(212) 592-1400
sselbst@herrick.com
hhuynh@herrick.com


**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x

In re:                                                                  :
                                                                            :   Chapter 11
97-111 HALE, LLC, and 100-114 HALE, LLC,       :
                                                                            :   Lead Case No.:  15-22381 (RDD)
                                        Debtors.                :   (Jointly Administered)

------------------------------------------------------------x

GRAND PACIFIC FINANCE CORP.,                     :
                                                                            :
                                        Plaintiff,             :
                                                                            :
                                        -against-             :   Adv. Pro. No. 15-08224 (RDD)
                                                                            :
97-111 HALE, LLC, 100-114 HALE, LLC, *et al.*,  :
                                                                            :
                                        Defendants.         :

------------------------------------------------------------ x

97-111 HALE, LLC, 100-114 HALE, LLC, ELI        :
BOBKER, BEN BOBKER and JOE BOBKER,     :
                                                                            :
                    Counterclaim-Plaintiffs/              :
                    Crossclaim-Plaintiffs,                  :
                                                                            :
                                        -against-             :
                                                                            :
GRAND PACIFIC FINANCE CORP.,                     :
                                                                            :
                    Counterclaim-Defendant,              :
                    and                                            :
                                                                            :
FINANCIAL ONE GROUP, *et al.*,                      :
                                                                            :
                    Crossclaim-Defendants,               :

------------------------------------------------------------x

**NOTICE OF MOTION OF GRAND PACIFIC FINANCE CORP. FOR ENTRY OF AN
ORDER (I) DISMISSING CERTAIN COUNTERCLAIMS AND CROSSCLAIMS, AND
(II) REMANDING THE ADVERSARY PROCEEDING TO THE STATE COURT**

**PLEASE TAKE NOTICE** that a hearing (the "Hearing") to consider the motion
(the "Motion") of Grand Pacific Finance Corp. ("Grand Pacific"), seeking entry of an order,
(i) dismissing certain counterclaims and crossclaims asserted by 97-111 Hale, LLC and 100-114
Hale, LLC (collectively, the "Debtors") in the above-captioned adversary proceeding, and
(ii) remanding the adversary proceeding to the Supreme Court of the State of New York,
Westchester County, shall be held before the Honorable Judge Robert D. Drain, Bankruptcy
Judge of the United States Bankruptcy Court for the Southern District of New York, at 300
Quarropas Street, White Plains, New York 10601 on **June 30, 2015 at 10:00 a.m.** (prevailing
Eastern Time).

**PLEASE TAKE FURTHER NOTICE** that objections to the Motion, if any,
must be in writing, shall conform to the Bankruptcy Rules and the Local Rules of the Bankruptcy
Court, and shall be filed with the Bankruptcy Court electronically in accordance with General
Order M-242 (General order M-242 and the User's Manual for the Electronic Case Filing System
can be found at www.nysb.uscourts.gov), by registered users of the Bankruptcy Court's case
filing system and, by all other parties in interest, on a 3.5 inch disk, preferably in Portable
Document Format (PDF), WordPerfect or any other Windows-based word processing format
(with a hard-copy delivered directly to Chambers), and shall be served in accordance with
General Order M-242 upon (a) counsel for Grand Pacific, Herrick, Feinstein LLP, 2 Park
Avenue, New York, NY  10016 (Attn.: Stephen B. Selbst, Esq.); (b) the Office of the United
States Trustee; and (c) all parties who have timely filed requests for notice under Rule 2002 of
the Bankruptcy Rules, so as to be received no later than **June 22, 2015**.

Dated: New York, New York
       June 15, 2015

HERRICK, FEINSTEIN LLP
*Attorneys for Grand Pacific Finance Corp.*

By: ___/s/ Stephen B. Selsbt_____
    Stephen B. Selbst
    Hanh V. Huynh
Two Park Avenue
New York, NY  10016
(212) 592-1400
(212) 592-1500
sselbst@herrick.com
hhuynh@herrick.com

**Hearing Date & Time:  June 30, 2015 at 10:00 a.m.**
**Objection Deadline:  June 22, 2015**

HERRICK, FEINSTEIN LLP
*Attorneys for Grand Pacific Finance Corp.*
Stephen B. Selbst
Hanh V. Huynh
Two Park Avenue
New York, NY  10016
(212) 592-1400
sselbst@herrick.com
hhuynh@herrick.com

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | |
| | : | Chapter 11 |
| 97-111 HALE, LLC, and 100-114 HALE, LLC, | : | |
| | : | Lead Case No.:  15-22381 (RDD) |
| Debtors. | : | (Jointly Administered) |

------------------------------------------------------------x

| | | |
|---|---|---|
| GRAND PACIFIC FINANCE CORP., | : | |
| | : | |
| Plaintiff, | : | |
| | : | Adv. Pro. No. 15-08224 (RDD) |
| -against- | : | |
| | : | |
| 97-111 HALE, LLC, 100-114 HALE, LLC, *et al.*, | : | |
| | : | |
| Defendants. | : | |

------------------------------------------------------------ x

| | |
|---|---|
| 97-111 HALE, LLC, 100-114 HALE, LLC, ELI BOBKER, BEN BOBKER and JOE BOBKER, | : |
| | : |
| Counterclaim-Plaintiffs/ Crossclaim-Plaintiffs, | : |
| | : |
| -against- | : |
| | : |
| GRAND PACIFIC FINANCE CORP., | : |
| | : |
| Counterclaim-Defendant, and | : |
| | : |
| FINANCIAL ONE GROUP, *et al.*, | : |
| | : |
| Crossclaim-Defendants, | : |

------------------------------------------------------------x

**MOTION OF GRAND PACIFIC FINANCE CORP. FOR ENTRY OF AN ORDER
(I) DISMISSING CERTAIN COUNTERCLAIMS AND CROSSCLAIMS, AND
(II) REMANDING THE ADVERSARY PROCEEDING TO THE STATE COURT**

Grand Pacific Finance Corp. ("Grand Pacific"), by its counsel Herrick, Feinstein LLP, submits this motion (the "Motion") seeking entry of an order, (I) pursuant to Rule 12(b) of the Federal Rules of Civil Procedure ("FRCP"), made applicable herein by Rule 7012 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), dismissing (A) the Fifth Counterclaim in the Third Amended Verified Answer, Affirmative Defenses, Counterclaims and Crossclaims (the "Third Amended Answer"), filed by 97-111 Hale, LLC and 100-114 Hale, LLC (collectively, the "Debtors") and their principals, inasmuch as the Fifth Counterclaim seeks declaratory judgment on issues already decided by the Supreme Court of the State of New York, Westchester County (the "Westchester State Court") and the Supreme Court of the State of New York, New York County (the "New York State Court"), (B) the Sixth Counterclaim in the Third Amended Answer in its entirety, and (C) the Seventh Counterclaim in the Third Amended Answer inasmuch the Seventh Counterclaim seeks reclassification of all of Grand Pacific's secured claims as equity interests, and seeks equitable subordination of Grand Pacific's claims on account of the Sterling Loans (defined below); and (II) pursuant to 28 U.S.C. § 1452(b), remanding this adversary proceeding to the Westchester State Court.  In support of the Motion, Grand Pacific respectfully represents as follows:

**PRELIMINARY STATEMENT**[1]

1.      For six years Grand Pacific has been embroiled in litigation against the Debtors and the Bobkers, all in an effort to collect the aggregate amount of over $18.4 million that they owed to Grand Pacific as of the Petition Date or to foreclose on the Properties (as hereinafter

---

[1] Capitalized terms not defined in the Preliminary Statement shall have the meaning ascribed to them herein.

defined), which are collateral for the various loans made to those parties. These chapter 11 cases and this adversary proceeding are yet another stratagem employed by the Debtors and the Bobkers to hinder, delay and frustrate Grand Pacific.

2.      Since the Grand Pacific loans were made in 2006, neither the Debtors, nor the Bobkers as guarantors, have made even a single interest payment on these loans, nor have they paid any real estate taxes on the Properties, forcing Grand Pacific to advance over $158,000 to protect the value of its collateral. Their unwillingness to make these payments demonstrates their contemptuous disregard for their legal obligations.

3.      In the Collection Action described below, Grand Pacific obtained a judgment for over $13 million against the Debtors and the Bobkers, which was affirmed on appeal, and entered in May of 2011. The judgment (in the amount of over $18.4 million, with post-judgment interest through the Petition Date) has been recorded, creating a valid judgment lien against the Properties. That judgment for over $18.4 million is final and unassailable. The enforceability of the Sterling Loans, the Mezzanine Loan, and the related guaranties decided in the Collection Action has been fully and finally determined, and the Debtors'/Bobkers' liability thereunder can no longer be subject to dispute.

4.      In March 2015, the Debtors and the Bobkers faced two looming deadlines: a hearing was scheduled in the Collection Action regarding the issuance of an installment payment order under New York CPLR § 5226 against Joe Bobker and Eli Bobker to enforce their guaranty obligations with respect to the Collection Action Judgment. In addition, trial was set for April 2015 in the Foreclosure Action in the Westchester State Court, in which Grand Pacific sought to foreclose on the Properties.

5.      One day before the installment payment order hearing, the Debtors commenced these chapter 11 cases, hoping in vain to forestall the installment payment order trial, although successfully preventing the Westchester State Court that has been presiding over the foreclosure action these last six years from conducting the trial.   In the Rule 1007 Affidavit filed to accompany the commencement of these chapter 11 cases, Eli Bobker, a licensed attorney in New York, expressly laid out the Debtors' strategy:  to collaterally attack the $18.4 million judgment simply by repackaging their state court counterclaims in the Third Amended Answer under a theory of equitable subordination.

6.      This Court should not allow the Debtors to re-litigate claims that have already been fully and finally decided by valid state court judgments.   Strikingly, the allegations of the Third Amended Answer are almost a verbatim cut-and-paste job from their prior complaint. Except for the brief procedural history of these chapter 11 cases, the Debtors have asserted no new facts and rely wholesale on the allegations already raised in the state court proceedings that were decided against them.   To the extent that the counterclaims in the Third Amended Complaint seek to invalidate the Sterling Loans and the Mezzanine Loan, they should be dismissed.   The remaining fraud claim and the Debtors' defenses to foreclosure, which were ready to be tried in the Westchester State Court, should be remanded to the state court, and the remaining equitable subordination claim with respect to the Grand Pacific Loan should be held in abeyance pending the adjudication of the fraud claim in the Westchester State Court.

## **BACKGROUND**

The Properties and the Grand Pacific Debt

7.      The Debtors are single asset real estate entities whose sole assets are the vacant lots located at 97-111 Hale Avenue and 100-114 Hale Avenue, White Plains, New York (collectively, the "Properties").   The equity interests in the Debtors are owned by the Bobker

Family Trust (40% Class A membership interest), Hale Club, LLC ("Hale Club") (40% Class A membership interest, and managing member), United Asian Fund LLC ("United Asian"), as nominee for Global One Corp. ("Global One") and 366 Madison, Inc. ("366 Madison") (10% Class B membership interest), and United Asian in its own right (10% Class B membership interest).

8.      The Debtors' principals are real estate developers Joe Bobker and his sons Eli Bobker and Ben Bobker.  The Debtors purchased the Properties in 2004.  On July 22, 2005, Sterling Real Estate Holding Company, Inc. ("Sterling") loaned $5.5 million to the Debtors, secured by a mortgage on the Properties and guaranteed by Eli Bobker and Ben Bobker.  On or about October 24, 2006, Sterling loaned another $1 million to the Debtors, secured by another mortgage on the Properties and guaranteed by Eli Bobker and Ben Bobker.  The $5.5 million and $1 million loans from Sterling are collectively referred to as the "Sterling Loans."

9.      On August 16, 2006, Grand Pacific loaned $5,362,500 to the Debtors (the "Grand Pacific Loan"), secured by a mortgage[2] on the Properties and guaranteed by Joe Bobker.  The loan documents in connection with the Grand Pacific Loan are annexed hereto as Exhibit A.  Grand Pacific made a separate loan to Hale Club in the amount of $1,637,500 (the "Mezzanine Loan"), also guaranteed by Joe.  The loan documents in connection with the Mezzanine Loan are annexed hereto as Exhibit B.

10.      The Grand Pacific Loan matured on August 16, 2007, and the Debtors and guarantors defaulted on the underlying note, mortgage and Joe Bobker's guaranty by failing to pay the loan.

---

[2] Specifically, to evidence the indebtedness under the Grand Pacific Loan, Grand Pacific took an assignment of an existing $300,000 note and the Debtors executed a $5,062,500 note in favor of Grand Pacific.  The two notes were then consolidated under an amended note.  To secure payment of the amended note, Grand Pacific took an assignment of an existing $300,000 mortgage and the Debtors delivered a mortgage of the Properties to Grand Pacific.

11.     On December 28, 2007, following the Debtors' default on the Mezzanine Loan, 366 Madison purchased a junior participation interest in Grand Pacific's rights under the Mezzanine Loan.

12.     On January 15, 2008, Grand Pacific purchased the Sterling Loans.  The loan documents in connection with the Sterling Loans and related assignments to Grand Pacific are annexed hereto as Exhibit C.

The Collection Action

13.     On April 16, 2009, Grand Pacific commenced an action pending under index number 601164/2009 in the New York State Court (the "Collection Action") against the Debtors and the Bobkers to collect sums due under the defaulted Sterling Loans, the Mezzanine Loan, and the related guaranties.

14.     The defendants filed an answer and thereafter an amended answer in which the Debtors and other defendants in the Collection Action raised affirmative defenses, counterclaims and crossclaims.

15.     By Decision and Order dated June 7, 2010, the New York State Court granted summary judgment in favor of Grand Pacific in the Collection Action, appointed a referee to compute the amounts due, and severed the counterclaims and crossclaims for separate disposition.  A copy of the June 7, 2010 Decision and Order is annexed hereto as Exhibit D.  In granting summary judgment to Grand Pacific on the issue of the Debtors' and the Bobkers' liability for breach of the Sterling notes and related guaranties, the New York State Court held as follows:

> In an attempt to raise a triable issue of material fact, defendants submit the affidavit of Eli Bobker which alleges that plaintiff fraudulently induced defendants into entering a joint venture.  As to the $1,637,500 loan, plaintiff submitted evidence that demonstrates that Joseph Klaynberg 'is the sole member and manager' of the Hale defendants and executed the

> documents on their behalf and that loan was absolutely and unconditionally secured by Joe Bobker.  The affidavit of Eli Bobker alleges that but for plaintiff's representations, Joe Bobker 'would never had [*sic*] signed a guarantee,' but defendants did not submit affidavits from either Klaynberg nor Joe Bobker in opposition, the individuals with personal knowledge of the facts.  Thus, defendants failed to proffer evidence sufficient to raise a triable issue of fact and plaintiff is entitled to summary judgment on the issue of liability on the fourth and fifth causes of action. …
>
> ***As to the $5,500,000 and $1,000,000 loans, defendants do not allege, let alone offer evidence tending to demonstrate, that Sterling, the original lender under both notes, fraudulently induced them into executing those documents.  In light of the foregoing and the breadth of the documents' broad language regarding the absolute and unconditional nature of the guaranties, the prolongation of this action for the recovery of an undisputed debt is rendered utterly pointless.***

June 7, 2010 Decision and Order at 6-7 (citations, quotations and alterations omitted; emphasis added).

16.     On December 20, 2011, the Appellate Division, First Department, affirmed the June 7, 2010 decision in all respects.  A copy of the First Department decision is annexed hereto as Exhibit E.  In affirming the New York State Court's grant of summary judgment in favor of Grand Pacific, the First Department held as follows:

> Defendants' opposition failed to raise a triable issue of fact sufficient to defeat summary judgment.  The notes and related guarantees prohibited defendants from bringing any counterclaims in an action to collect under the notes, and absolutely and unconditionally guaranteed payment of the debt irrespective of any lack of validity or enforceability of any loan document.  Thus, regardless of the merit of the counterclaims and cross claims, the guarantees effectively barred the defenses.  ***Moreover, the claims of fraudulent inducement by plaintiff were irrelevant to the two loans originally made by a nonparty, from whom plaintiff acquired the notes,*** and the third loan was made to defendant Hale Club, which did not claim that it was defrauded.

First Department decision at 534-35 (emphasis added).

17.     On or about March 15, 2011, the New York State Court confirmed a special referee's findings as to the amounts due under the three loans at issue in the Collection Action,

and on or about May 20, 2011, judgment in the amount of $13,710,123.36 (the "Collection Action Judgment") was entered in favor of Grand Pacific.  Grand Pacific has been attempting to collect on the judgment since that time, and post-judgment interest continues to accrue. Including 9% statutory post-judgment interest, the amount of the Collection Action Judgment as of the date of the commencement of the chapter 11 cases is over *$18.4 million*.  The Collection Action Judgment was duly recorded on June 5, 2011, and is a valid lien against the Properties. *As set forth below, this judgment and the judgment lien are protected from collateral attack and are thus unassailable*.  A copy of the Collection Action Judgment is annexed hereto as Exhibit F.

18.     On September 29, 2012, the New York State Court entered a decision and order, a copy of which is attached hereto as Exhibit G, denying the defendants' request in the Collection Action to file a second amended answer and counterclaims that sought relief that is virtually identical to the second amended answer and counterclaims the defendants filed in the Foreclosure Action. The New York State Court dismissed all of the crossclaims and counterclaims, because those same claims were being litigated in the Westchester State Court, and noted the following:

> The court also notes several of the proposed cross claims/counterclaims seek "expungement of all mortgage-related notes with respect to the Hale Project" or a declaration that the guaranty and note agreements entered by plaintiff and defendants are "of no force or effect."  *In effect, defendants are attempting to use their proposed cross claims/counterclaims to attack the validity of the agreements which formed the basis of the judgment previously entered against them.  The allegations asserted in support of the proposed cross claims/counterclaims were previously asserted in opposition to plaintiff's motion for summary judgment and were found insufficient to raise a triable issue of fact by this court and the Appellate Division, First Department.  Thus, were the court to review the merits of defendants' motion for leave to amend their answer, the court would find that at least a portion of the proposed second amended verified*

>*answer is palpably insufficient to state a cause of action and patently*
>*devoid of merit*.

September 29, 2012 Decision and Order at 16 (citations, quotation and alteration omitted;

emphasis added).  The issue of the Debtors' and the Bobkers' liability to Grand Pacific on the

Sterling Loans and the Mezzanine Loan has been fully and finally adjudicated in the New York

State Court, whose decision was and affirmed in its entirety by the First Department.  The

Collection Action Judgment is a final judgment, and is unassailable.

The Foreclosure Action

19.     On April 17, 2009, Grand Pacific commenced an action pending under index

number 008084/2009 in the Westchester State Court (the "Foreclosure Action") by filing a

complaint to foreclose on the mortgage securing the Grand Pacific Loan and for entry of

judgment against Joe Bobker on his guaranty.

20.     On July 17, 2009, the defendants answered and admitted executing and delivering

the note and mortgage under the Grand Pacific Loan and failing to pay the amounts due

thereunder.  On August 6, 2009, the defendants served an amended answer, in which they

asserted the same affirmative defenses, counterclaims and crossclaims stated in the Collection

Action.

21.     On July 22, 2010, Grand Pacific filed a motion for summary judgment prior to

discovery.  The Westchester State Court held that Grand Pacific made out a *prima facie* case for

foreclosure, although it also held that the defendants had raised issues of fact with respect to their

default on the Grand Pacific Loan.

22.     On April 19, 2011, the Westchester State Court permitted the Debtors and the

other defendants to serve a second amended answer (the "Second Amended Answer").  A copy

of the Second Amended Answer is annexed hereto as <u>Exhibit H</u>.  The Second Amended Answer raised the following affirmative defenses, counterclaims and crossclaims:

- First Affirmative Defense (failure to state a claim)

- Second Affirmative Defense (failure to mitigate damages)

- Third Affirmative Defense (running of statutes of limitations)

- Fourth Affirmative Defense (estoppel)

- Fifth Affirmative Defense (waiver)

- Sixth Affirmative Defense (laches)

- Seventh Affirmative Defense (unclean hands)

- Eighth Affirmative Defense (breach of fiduciary duty, breach of contract, fraud)

- Ninth Affirmative Defense (fraudulent inducement)

- Tenth Affirmative Defense (fraudulent conduct in creating false Social Security number for Joe Bobker)

- Eleventh Affirmative Defense (ineffective guaranty)

- Twelfth Affirmative Defense (reserve additional affirmative defenses)

- First Counterclaim/Crossclaim (fraudulent misrepresentations)

- Second Counterclaim/Crossclaim (breach of fiduciary duties)

- Third Counterclaim/Crossclaim (conversion)

- Fourth Counterclaim/Crossclaim (fraud in obtaining guaranty)

- Fifth Counterclaim/Crossclaim (declaratory judgment)

23.   Following two years of discovery, Grand Pacific again moved for summary judgment based on the defendants' amended pleadings and the evidence adduced in discovery. In a Decision and Order dated March 28, 2013, the Westchester State Court made the following rulings with respect to Grand Pacific:

- Denying Grand Pacific summary judgment of foreclosure;

- Denying summary judgment on defendants' first (fraudulent misrepresentation), second (breach of fiduciary duties) and fifth counterclaims/crossclaims (declaratory judgment);

- Granting summary judgment dismissing fourth counterclaim/crossclaim (Joe Bobker's guaranty is enforceable, and Grand Pacific is entitled to judgment on that claim);

- Granting summary judgment dismissing third counterclaim/crossclaim (conversion); and

- Granting summary judgment striking defendants' first, second, third, fifth, sixth, tenth, eleventh, and twelfth affirmative defenses.

A copy of the March 28, 2013 Westchester State Court decision is annexed hereto as <u>Exhibit I</u>.

24.    With respect to the defendants' contention that Grand Pacific invested in the development of the Properties as a joint venture or partner of the Debtors/the Bobkers, the Westchester State Court found as follows:

> While at times defendants contend that the parties' dealings has been a joint venture, this Court must agree with all moving parties that ***no legal joint venture has been proven to exist between defendants and any other party because there are no allegations of, let alone any supporting proof, that any of the parties had agreed to share control of the Hale Project or responsibilities for its losses. Moreover, the Operating Agreements here in issue specifically state that limited liability companies are being established; no mention of any joint venture is contained in those written agreements which expressly state that said Agreement represents the entirety of the parties' agreement.*** Therefore, notwithstanding the percentage of ownership assigned to Global One and 366 Madison, in the absence of any proof of joinder of property, skills and risks, no joint enterprise exists.

March 28, 2013 Decision and Order at 22 (citations omitted; emphasis added).

25.    The March 28, 2013 Decision and Order also held that "to the limited extent only that defendants are seeking compensatory damages in their fifth counterclaim/crossclaim for declaratory judgment, movants also are granted dismissal of that portion of said

counterclaim/crossclaim.  This Court is not aware of any authority holding that compensatory damages properly may be sought in a declaratory judgment claim." *Id.* at 26.

26.     Grand Pacific appealed the March 28, 2013 Decision and Order.  On appeal, on December 10, 2014, the Appellate Division, Second Department, ordered the modification of the Westchester State Court order to provide, with respect to Grand Pacific:  (i) summary judgment to Grand Pacific striking the fourth, seventh, eighth, and ninth affirmative defenses; and (ii) summary judgment to Grand Pacific dismissing the defendants' first and second counterclaims (resulting in the dismissal of all counterclaims other than the equitable elements of the fifth counterclaim).  The Second Department affirmed the Westchester State Court's denial of summary judgment on the complaint for foreclosure.  A copy of the Second Department's decision on appeal is annexed hereto as Exhibit J.

27.     In reversing the Westchester State Court, and granting summary judgment dismissing the second counterclaim (which alleged breach of fiduciary duty arising from a joint venture or partnership), the Second Department held as follows:

> Generally, where parties have entered into a contract, courts look to that agreement to discover the nexus of the parties' relationship and the particular contractual expression establishing the parties' interdependency. If the parties do not create their own relationship of higher trust, courts should not ordinarily transport them to the higher realm of relationship and fashion the stricter duty for them. ***Here, the written operating agreements submitted in support of the motions demonstrated an intent to form a limited liability company, not a partnership or joint venture that would have given rise to a fiduciary relationship.***  Moreover, the members of the limited liability company did not share control of the subject development project or responsibility for the losses, which are elements of both a joint venture and a partnership.  In opposition to the movants' prima facie showing, the Bobker respondents, who relied on the same operating agreements, failed to raise a triable issue of fact.

Second Department Decision at 3 (emphasis added).

28.     The Second Department further held that:

> [Grand Pacific and the crossclaim defendants] demonstrated their prima facie entitlement to judgment as a matter of law dismissing the Bobker respondents' fraud claims.  The evidence submitted in support of the motions established, prima facie, that the Bobker respondents could not have reasonably relied on alleged oral representations concerning the mortgage, the associated notes, and the operating agreements.  Additionally, ***the loss of an alternative contractual bargain cannot serve as a basis for fraud or misrepresentation damages.  The submissions in support of the motions also demonstrated that, contrary to the Bobker respondents' allegation, Grand Pacific did not fail to disclose its relationship with Global One and 366 Madison***.

*Id.* at 4 (citations, quotations and alterations omitted; emphasis added).

29.     Thus, the sole counterclaim that survived following the Second Department's decision, was the portion of the fifth counterclaim for declaratory judgment regarding Grand Pacific's alleged misconduct relieving the Debtors/Bobkers from liability under the Grand Pacific Loan.  As the Second Department explained, the counterclaim plaintiffs have "raised a triable issue of fact as to whether Grand Pacific acted in bad faith and engaged in oppressive and unconscionable conduct in, among other things, allegedly preventing the Bobker respondents from paying off the loan secured by the subject mortgage unless they also paid off certain loans made by … Global One Corp. … and 366 Madison, Inc. …, and by interfering with the Bobker respondents' attempts to obtain funds from, or sell subject properties to, other investors."  Second Department Appeal Decision at 3 (citations omitted).

30.     The Westchester State Court scheduled a trial date of April 27, 2015 for the Foreclosure Action.  The Debtors and the Bobkers made a jury demand in the Foreclosure Action.

<u>Related Litigations Involving the Debtors/the Bobkers and Grand Pacific</u>

31.     Following the entry of the Collection Action Judgment, Joe Bobker commenced a lawsuit against, among others, Grand Pacific and the attorneys at Herrick, Feinstein LLP, in the New York State Court (Judge Jaffe), alleging that the judgment was procured illicitly.  On

November 6, 2013, Judge Jaffe granted defendants' summary judgment and dismissed the

plaintiff's complaint.  A copy of Judge Jaffe's decision (the "Jaffe Decision") is annexed hereto

as Exhibit K.  Notably, Judge Jaffe held that:

> Here, the participation agreement between Grand Pacific and 366 Madison
> neither transfers nor assigns title to the loan.   366 Madison only
> participated in the loan, and the parties agree that Grand Pacific retains
> possession of all the original loan documents and servicing rights. …
> Grand Pacific was thus entitled to sue plaintiff on his default, and its
> representation that it was holder of the note is consistent with both the
> original loan, which authorized the sale of participation interests, and the
> purchase agreement, which authorized Grand Pacific alone to enforce the
> loan.  Consequently, there was no misrepresentation.

Jaffe Decision at 7.

32.    Lastly, in contemporaneous litigation in the New York State Court (Judge Ramos)

by a lender foreclosing on another property owned by a Bobker entity arising out of a

condominium conversion project known as the "Morgan Lofts," the Bobker entity asserted

crossclaims against, among others, Grand Pacific on similar theories of fraud asserted in the

Collection Action and Foreclosure Action.

33.    Judge Ramos dismissed all of the crossclaims in the Morgan Lofts litigation, and

in a Memorandum Decision entered on October 16, 2012 (the "Ramos Decision"), made the

following relevant finding:

> The Cross-claim Plaintiffs' allegations that the lenders or their officers
> concealed information regarding relationships or payments between one
> another are insufficient to bring a cause of action for fraudulent
> inducement because the Cross-claim Plaintiffs have not made a showing
> that the lenders had a duty to disclose the information in question as a
> matter of law.  Nor have the Cross-claim Plaintiffs pled facts that would
> lead this Court to conclude that reliance on the alleged omissions induced
> them to enter into the various lending agreements.

Ramos Decision at 12-13.  A copy of the Ramos Decision is annexed hereto as Exhibit L.

15-08224-rdd   Doc 7   Filed 06/15/15   Entered 06/15/15 17:16:32   Main Document
Pg 18 of 31

The Chapter 11 Cases and the Adversary Proceeding

34.     On March 25, 2015 (the "Petition Date"), less than a month before the scheduled trial of the Foreclosure Action, the Debtors filed their chapter 11 cases.[3]  The chapter 11 cases are jointly administered pursuant to an order entered by the Court on April 15, 2015.

35.     On April 7, 2015, the Debtors filed a notice of removal of the Foreclosure Action.

36.     On June 1, 2015, the Debtors and the Bobkers filed the Third Amended Complaint [Adv. Pro. Docket No. 5].   Other than the addition of the Sixth and Seventh Counterclaims and Crossclaims (and two paragraphs regarding the commencement of the Debtors' bankruptcy cases), the Third Amended Complaint is nearly identical to the Second Amended Complaint that was filed in the Foreclosure Action and which the Westchester State Court and the Second Department considered in connection with Grand Pacific's motion for summary judgment in that action.  Minor, non-material revisions have been made to the common allegations, and certain of the affirmative defenses and counterclaims/crossclaims have been stricken in accordance with the March 28, 2013 Decision and Order and the Second Department's decision on appeal.  The Debtors essentially have cut and pasted the Second Amended Complaint, and then dressed it up with an equitable subordination claim that relies entirely on all the same allegations in the Second Amended Complaint.  ***Not a single new fact relevant to the counterclaims has been asserted in the Third Amended Complaint.***

37.     The Fifth Counterclaim remains fundamentally unchanged.  The Debtors and the Bobkers continue to seek declaratory judgment that (a) the Debtors have no liability to Grand

---

[3] The Debtors deliberately timed the filing of the cases to forestall a referee's hearing in the New York State Court regarding Grand Pacific's motion to seek an installment payment order against only the Bobkers.  The Petition Date was the day prior to that hearing.  By letter dated March 25, 2015 from Debtors' counsel, Mr. Pasternak, to counsel for Grand Pacific, Mr. Pasternak took the position that the referee's hearing was stayed by the Debtors' bankruptcy filings, which Grand Pacific disputed.  At the hearing the following day, the state court referee determined that the stay did not apply to the non-debtor Bobker defendants and conducted the hearing on Grand Pacific's request for an installment payment order.

Pacific for any financing or equity investments in the Hale Project; (b) all liens held by Grand Pacific with respect to the Hale Project are of no force or effect; (c) all guaranties with respect to the Hale Project are of no force or effect; (d) all funds that Grand Pacific utilized to acquire the Sterling notes constitute capital contributions and not loans; and (e) Grand Pacific is liable to the Bobker Group in an amount to be determined at trial.

38.     The newly-added Sixth Counterclaim seeks monetary and compensatory damages based on the declaratory judgment in the Fifth Counterclaim.

39.     Lastly, the newly-added Seventh Counterclaim seeks to reclassify Grand Pacific's claims under the Sterling Loans and the Grand Pacific Loan as equity interests and such liens discharged, or, in the alternative, equitably subordinate such claims.  Echoing the allegations previously asserted in the Second Amended Complaint, the Debtors/Bobkers point to the following specific purported misconduct as the basis for reclassification/subordination:

- Grand Pacific misled the Debtors and induced them to reject the sale of the Hale Project to Gurevich;

- Grand Pacific interfered with the Debtors' attempts to obtain funds from, or sell the Hale Project to, other investors;

- Grand Pacific forced the Debtors to pay off Grand Pacific's secret affililates by withholding funding on the Morgan Lofts project;

- Grand Pacific colluded with its parent to acquire the Hale Project from the Debtors;

- Grand Pacific, through its affiliates, acquired the Sterling notes in violation of the Debtors' Operating Agreements;

- Grand Pacific prevented the Debtors from paying off the Grand Pacific Loan unless the Debtors paid off the amounts owed to Global One and 366 Madison;

- Grand Pacific demanded $10 million to pay off $7 million;

- Grand Pacific sold "participations" in its loan related to the Hale Project to members of the Debtors; and

- Grand Pacific forged Joe Bobker's social security number to get underwriting approval.

40.     Each of these allegations of misconduct was asserted in the Foreclosure Action to support the Debtors'/Bobkers' affirmative defenses, counterclaims and crossclaims in the Second Amended Complaint.  The Debtors have asserted no new allegations whatsoever in the Third Amended Complaint to support the Seventh Counterclaim.  The underlying factual allegations surrounding the Debtors' request for reclassification or equitable subordination are the same as the facts regarding Grand Pacific's alleged fraud and misconduct to support the Debtors' defense to foreclosure and request for declaratory judgment that the Debtors/Bobkers should not be liable to Grand Pacific under the Sterling Loans or the Grand Pacific Loan.

## ARGUMENT

41.     By this Motion, Grand Pacific seeks to dismiss the Fifth, Sixth and Seventh Counterclaims in the Third Amended Complaint, to the extent set forth herein, pursuant to Bankruptcy Rule 7012 and FRCP 12(b)(1) and (6) on the theories of the *Rooker-Feldman* doctrine, *res judicata* and/or collateral estoppel.

42.     Further, Grand Pacific requests that the Court remand the adversary proceeding back to the Westchester State Court so that the Foreclosure Action (which is trial ready) may be fully adjudicated in the most efficient manner.

## I.     DISMISSAL OF CERTAIN COUNTERCLAIMS IN THE THIRD AMENDED COMPLAINT

43.     A cause of action may be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the federal court lacks the statutory or constitutional power to adjudicate it. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  Under the *Rooker-Feldman* doctrine, a federal court lacks jurisdiction over suits that are, in substance, appeals from state

court judgments. *See Vossbrinck v. Accredited Home Lenders, Inc.*, 773 F.3d 423, 426 (2d Cir. 2014). There are four requirements for the application of *Rooker-Feldman*: "(1) the federal-court plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a state court judgment; (3) the plaintiff invites review and rejection of that judgment; and (4) the state judgment was rendered before the district court proceedings commenced." *Id.* (internal quotation, citation and alterations omitted).

44.    In deciding a motion to dismiss under FRCP 12(b)(6) for failure to state a claim upon which relief can be granted, the Court is confined to the allegations contained within the four corners of the complaint. The case law under FRCP 12(b)(6) has been interpreted broadly to encompass review of anything of which judicial notice may be taken. *See Libbey v. Village of Atlantic Beach*, 982 F. Supp. 2d 185, 201 (E.D.N.Y. 2013). Thus, a court may dismiss a cause of action under FRCP 12(b)(6) if *res judicata* or collateral estoppel applies to preclude a party from raising a particular claim or issue, respectively.

45.    "The doctrine of *res judicata* bars a party from asserting claims that either (i) are duplicative of the claims between the parties that were previously decided on the merits, or (ii) claims that arise out of the same facts as claims between the same parties that were previously decided on the merits." *MacPherson v. State Street Bank & Trust Co.*, 452 F. Supp. 2d 133, 140 (E.D.N.Y. 2006). "To determine whether *res judicata* applies to preclude later litigation, a court must find that '(1) the previous action involved an adjudication on the merits; (2) the previous action involved the [parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action.'" *Id.* (quoting *Pike v. Freeman*, 266 F.3d 78, 91 (2d Cir. 2001).

46.     "[C]ollateral estoppel applies where first, the identical issue necessarily must have been decided in the prior action and be decisive of the present action, and second, the party to be precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination."  *In re Ramirez*, 528 B.R. 580, 588 (Bankr. S.D.N.Y. 2015).

A.      **The Fifth Counterclaim Should Be Dismissed To The Extent
        That It Asserts Claims Already Dismissed In The State Court Proceedings**

47.     The Fifth Counterclaim must be dismissed to the extent that it attempts to overturn the Collection Action Judgment.  All claims that the Debtors and the Bobkers have no liability under the Sterling Loans and the Mezzanine Loan are barred by the *Rooker-Feldman* doctrine, because all four elements of that doctrine are met.

48.     Application of the *Rooker-Feldman* doctrine prohibits the Debtors and the Bobkers from asserting the claims in the Fifth Counterclaim as to the Sterling Loans, the Mezzanine Loan and the related guaranties.  First, the Debtors/Bobkers (federal-court plaintiffs in this case) lost in state court.  Summary judgment was entered against them in the Collection Action.  That judgment was affirmed on appeal.  No further appeals have been taken, and the Collection Action Judgment is final, having been entered more than four years ago.  Second, the Debtors/Bobkers complain of injuries caused by the Collection Action Judgment.  The Fifth Counterclaim expressly seeks declaratory judgment that the Sterling notes are of no force and effect, a direct attack on the validity of the Collection Action Judgment, which determined the liability of the Debtors and the Bobkers on the Sterling Loans, the Mezzanine Loan and the related guaranties.

49.     Third, the Debtors/Bobkers invite review and rejection of the judgment by seeking relief in the Fifth Counterclaim that is exactly contrary to the relief granted in the judgment.  The Collection Action Judgment was based on the court's grant of summary

judgment in favor of Grand Pacific on the issue of liability.  In reviewing the Second Amended

Complaint (which contains the same Fifth Counterclaim as the Third Amended Complaint), the

New York State Court presciently noted that "several of the proposed cross claims/counterclaims

seek 'expungement of all mortgage-related notes with respect to the Hale Project' or a

declaration that the guaranty and note agreements entered by plaintiff and defendants are 'of no

force or effect,'" which the court characterized as an attack on the validity of the agreements that

formed the basis of the $13 million state court judgment.  September 29, 2012 Decision and

Order at 16.  Thus, by seeking to invalidate the Debtors'/Bobkers' liability on the Sterling Loans

(which the New York State Court has already decided and entered judgment in favor of Grand

Pacific), the Debtors effectively are attempting to overturn the state court judgment.

     50.    Lastly, the Collection Action Judgment was rendered before the adversary

proceeding was commenced.

     51.    Additionally, the Fifth Counterclaim should be dismissed to the extent that it

seeks relief beyond what was preserved in the Second Department decision on appeal.  As stated

above, the Second Department held that the counterclaim plaintiffs have "raised a triable issue of

fact as to whether Grand Pacific acted in bad faith and engaged in oppressive and

unconscionable conduct in, among other things, allegedly preventing the Bobker respondents

from paying off the loan secured by the subject mortgage unless they also paid off certain loans

made by … Global One Corp. … and 366 Madison, Inc. …, and by interfering with the Bobker

respondents' attempts to obtain funds from, or sell subject properties to, other investors."

Second Department Appeal Decision at 3.

     52.    However, the Fifth Counterclaim, as set forth in the Third Amended Complaint,

continues to seek declaratory judgment that (i) the Debtors and the Bobkers have no liability to

Grand Pacific in connection with the Sterling Loans; (ii) all liens held by Grand Pacific on account of the Sterling Loans are of no force and effect; (iii) all guaranties with respect to the Hale Project are of no force or effect; (iv) all funds that Grand Pacific utilized to acquire the Sterling Notes constitute capital contributions with respect to the Hale Project and not loans; and (v) Grand Pacific is liable to the Bobker Group in an amount to be determined at trial. Each of these claims is precluded by virtue of *res judicata* and/or collateral estoppel.

53.    The claim for declaratory judgment that the guaranties related to the Sterling Loans and the Mezzanine Loan are of no force and effect is barred by collateral estoppel. The First Department, in affirming the New York State Court's June 7, 2010 Decision and Order specifically held that those guaranties were absolute and unconditional, irrespective of whether the loan documents were enforceable. *See* First Department December 20, 2011 Decision at 534. Collateral estoppel applies in this context because the identical issue (whether the guaranties are enforceable) was decided in the Collection Action and is decisive of the present action, and the Debtors/Bobkers had a full and fair opportunity to contest the prior determination. They were represented by counsel, submitted papers in opposition to Grand Pacific's summary judgment motion and participated in the appeal to the First Department.

54.    The claim for declaratory judgment that the funds used to acquire the Sterling Loans were capital contributions is also barred by collateral estoppel. The various state courts, in a number of instances, have determined that there was no joint venture or partnership between the parties. *See* June 7, 2010 Decision and Order in the Collection Action at 6; March 28, 2013 Decision and Order in the Foreclosure Action at 22; Second Department decision at 3. Again, this exact issue was adjudicated in the state courts, and the Debtors/Bobkers had a full and fair opportunity to contest the prior determinations.

B.      **The Sixth Counterclaim Should Be Dismissed In Its Entirety**

55.     The Sixth Counterclaim (seeking damages arising from the declaratory judgment

in the Fifth Counterclaim) must be dismissed in its entirety as barred by *res judicata*.   The

Westchester State Court has already ruled that "to the limited extent only that defendants are

seeking compensatory damages in their fifth counterclaim/crossclaim for declaratory judgment,

movants also are granted dismissal of that portion of said counterclaim/crossclaim.   This Court is

not aware of any authority holding that compensatory damages properly may be sought in a

declaratory judgment claim."   March 28, 2013 Decision and Order at 26.   The Second

Department did not disturb this specific ruling on appeal.

C.      **The Seventh Counterclaim Should Be Dismissed To The Extent That It Seeks
        To Reclassify Grand Pacific's Secured Claims As Equity Interests, And To
        The Extent It Seeks To Equitably Subordinate Grand Pacific's Claims On
        The Sterling Loans**

56.     The Seventh Counterclaim (for reclassification and/or equitable subordination)

should be dismissed to the extent that the Debtors seek to reclassify the Grand Pacific debt as

equity interests.   The Debtors are barred by collateral estoppel from raising this issue.   The

numerous state court decisions have all held that there was no joint venture or partnership

between the parties.

57.     Further, the Seventh Counterclaim should be dismissed insofar as it asserts an

equitable subordination claim in connection with the Sterling Loans, the Mezzanine Loan, and

the related guaranties.   The Collection Action Judgment has been entered since May 2011 (over

four years ago), affirmed on appeal, and is final.   The Debtors cannot now collaterally attack the

judgment and the validity of the Sterling Loans and the Mezzanine Loan by repackaging the

claim as an equitable subordination claim.   Nor can the judgment lien filed on the Properties as a

result of the Collection Action Judgment now be collaterally attacked simply because the validity of the judgment has been made a part of the equitable subordination claim.

58.     These Debtors are not the first to pursue this path; the caselaw includes unsuccessful attempts by previous debtors.  In *In re Assante*, 470 B.R. 707 (Bankr. S.D.N.Y. 2012), a recent decision issued by this Court, the debtor was a defendant in a pre-petition state court foreclosure action commenced by the mortgagee bank.  470 B.R. at 709.  In the foreclosure action, the debtor filed an answer and raised the affirmative defenses of fraud and unclean hands, and asserted four counterclaims against the bank, including fraud and declaratory judgment that the mortgage note was invalid.  *Id.*  The bank moved to strike the debtor's answer, counterclaims and defenses, and for summary judgment of foreclosure.  *Id.* at 709-10.  The state court granted the bank's summary judgment motion, and dismissed the debtor's affirmative defenses and counterclaims.  *Id.* at 710.

59.     Before the bank could foreclose on the debtor's properties, the debtor filed a chapter 11 case and commenced an adversary proceeding by filing a complaint seeking equitable subordination of the bank's mortgage and frustration of contract.  *Id.*  The debtor's claims were based on the same allegations of fraud and misconduct by the bank that were asserted in the debtor's answer, affirmative defenses and counterclaims in the state court foreclosure action.  *Id.*

60.     In the *Assante* decision, this Court found that "[the debtor's] claims are barred by collateral estoppel because the issues he seeks to litigate are identical to the issues necessarily decided by the Orange County Supreme Court, and these very same issues were already fully and fairly litigated in the foreclosure action.  The Plaintiff now seeks different remedies based on the same factual allegations set forth in the foreclosure action and under the guise of new legal theories [*i.e.*, equitable subordination and frustration of contract]."  *Id.* at 713.  The Court went

26

on to explain that "[w]hile a claim for equitable subordination under section 510(c) of the Bankruptcy Code is unique to bankruptcy, the underlying issue of a creditor's conduct is not." *Id.* at 714.

61.     Similarly in *In re 9281 Shore Road Owners Corp.*, 214 B.R. 676 (Bankr. E.D.N.Y. 1997), the debtor attempted to resurrect defenses to foreclosure by asserting an equitable subordination claim in bankruptcy.  The *9281 Shore Road Owners Corp.* case is factually on all fours with this case, to the extent that the Debtors seek to equitably subordinate the Sterling Loans.  The debtor in that case commenced an adversary proceeding asserting identical claims as the affirmative defenses and counterclaims that it raised in the state foreclosure action, but under the guise of an equitable subordination claim.  In both the state court foreclosure action and the adversary proceeding, the debtor claimed that the mortgagor/defendant engaged in the same fraudulent conduct.  The court dismissed the debtor's equitable subordination claim, because "case law holds that where the same allegations of misconduct were raised as affirmative defenses and decided against a debtor, the same factual allegations cannot be used in a subsequent proceeding in Bankruptcy Court to subordinate the creditor's claims or otherwise attack the validity of the creditor's lien."  *Id.* at 689.

62.     As with the debtors in *Assante* and *9281 Shore Road*, the Debtors here have not alleged any new facts to support an equitable subordination claim, and rely on the same allegations of fraudulent conduct by Grand Pacific and the other counterclaim/crossclaim defendants that were asserted in the state court actions.  To the extent that the Debtors' equitable subordination claim seeks to attack the validity of the Sterling Loans and the Mezzanine Loan, the Court should follow *Assante* and *9281 Shore Road* and dismiss the claim.

## II.     REMAND OF THE ADVERSARY PROCEEDING

63.     28 U.S.C. § 1452(b) provides that the Court may remand a removed action "on any equitable ground."  28 U.S.C § 1452(b).  Courts in the Second Circuit consider the following seven factors in determining whether to remand an action:

> (1) the effect on the efficient administration of the bankruptcy estate; (2) the extent to which issues of state law predominate; (3) the difficulty or unsettled nature of the applicable state law; (4) comity; (5) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (6) the existence of the right to a jury trial; and (7) prejudice to the involuntarily removed defendants.

*In re 9281 Shore Road Owners Corp.*, 214 B.R. at 696 (citing *Drexel Burnham Lambert Group, Inc. v. Vigilant Ins. Co.*, 130 B.R. 405, 407 (S.D.N.Y. 1991)).

64.     Application of these factors militates heavily in favor of remand.

### A.     <u>Efficient Administration</u>

65.     The efficient administration of the chapter 11 cases will benefit from a remand of the adversary proceeding to the Westchester State Court, given the state court's familiarity with the matter and the fact that the dispute is trial ready.  The Westchester State Court itself recognized the immense complexity of the Foreclosure Action, characterizing the task of adjudicating the matter as "Herculean":

> For this Court to re-state herein all of the facts and respective numerous arguments claimed by all of the many parties in this complicated commercial action, in which a 44-page second amended answer with counterclaims and crossclaims against no fewer than 16 individuals and entities has been filed, and which has been simultaneously litigated for almost four years in this Court and in Supreme Court, New York County, would be a Herculean undertaking, simply not possible given this assigned non-commercial Part's additional heavy civil motion workload.

March 28, 2013 Decision and Order at 3.

66.     As discussed above, although the Debtors have asserted an equitable subordination claim under section 510(c) of the Bankruptcy Code, because the underlying set of facts regarding Grand Pacific's alleged misconduct giving rise to the equitable subordination claim are identical to the factual issues before the Westchester State Court, the state court's determination of those factual issues will further the efficient administration of the Debtor's chapter 11 cases.

67.     The Westchester State Court is in a better position to adjudicate the Foreclosure Action, and its determinations will have collateral estoppel effect on any equitable subordination claim that may remain following the Westchester State Court's findings regarding Grand Pacific's alleged misconduct.

68.     Given a state court's greater familiarity and expertise in foreclosure actions than a bankruptcy court, it is not surprising that bankruptcy courts generally will remand foreclosure actions.  As this Court has previously explained:

> [A] bankruptcy court is traditionally reluctant to retain a state court mortgage foreclosure proceeding that has been removed to it. Several characteristics common to mortgage foreclosure proceedings contribute to this reluctance.  Mortgage foreclosures are non-core proceedings, and hence, the bankruptcy court cannot enter final orders.  Resolution of the issues depends upon state law administered by judges with superior expertise, and principles of comity command deference.  Where the state court has already decided the issues in the proceeding, retention prejudices the secured creditor, wastes judicial resources and delays the administration of the bankruptcy case.  Foreclosure proceedings often involve third parties, and bankruptcy courts cannot ordinarily hear and decide disputes between non-debtor third parties.

*In re Tornheim*, 181 B.R. 161, 170-71 (Bankr. S.D.N.Y. 1995) (internal citations omitted).

69.     Accordingly, remand of the adversary proceeding clearly advances the efficient administrative of the chapter 11 cases.

**B.      Predominance Of State Law**

70.      The Foreclosure Action is entirely grounded on state law.  And even though an equitable subordination claim has been asserted by the Debtors, it is nothing more than a re-packaged fraud claim already asserted in the Debtors' counterclaims in the Foreclosure Action. *See In re 9281 Shore Road Owners Corp.*, 214 B.R. 676 (Bankr. E.D.N.Y. 1997) (dismissing debtor's equitable subordination claim against a mortgage holder where debtor sought to relitigate claims that were identical to its affirmative defenses and counterclaims in the state court foreclosure action).

**C.      Difficulty Or Unsettled Nature Of State Law**

71.      As the Westchester State Court acknowledged, the Foreclosure Action is a complicated commercial action, and the Westchester State Court is in the best position to adjudicate the dispute.

**D.      Comity**

72.      The Foreclosure Action has been pending before the Westchester State Court since April 2009, more than six years ago.  Moreover, the Westchester State Court has greater familiarity with the state law issues in the litigation.  Comity thus favors remand of the adversary proceeding.

**E.      Degree Of Relatedness To Main Bankruptcy Case**

73.      The disposition of the Foreclosure Action is admittedly related to the Debtors' chapter 11 cases.

**F.      Existence Of Right To Jury Trial**

74.      The Debtors and the Bobkers have requested a jury trial.

### G.    <u>Prejudice To Involuntarily Removed Party</u>

75.    The prejudice to Grand Pacific favors remand of the adversary proceeding.  The lengthy interruption necessary for this Court to become familiar with the complexities of this matter will be highly prejudicial to Grand Pacific and further plays into the Debtors' delay tactics.  Grand Pacific has been precluded from the legitimate exercise of its rights as a secured creditor for six years now, without a single repayment from the Debtors on the multimillion loans they have given.  To add insult to injury, Grand Pacific has had to pay taxes on the Properties to protect its collateral.  There is palpable prejudice to Grand Pacific.

<u>CONCLUSION</u>

For all the reasons set forth herein, Grand Pacific respectfully requests that the Court enter an order dismissing the Fifth, Sixth and Seventh Counterclaims as set forth herein, and remanding the adversary proceeding to the Westchester State Court, and grant Grand Pacific such other and further relief as may be just and proper.

Dated: New York, New York
      June 15, 2015

HERRICK, FEINSTEIN LLP
*Attorneys for Grand Pacific Finance Corp.*

By:   */s/  Stephen B. Selsbt*
    Stephen B. Selbst
    Hanh V. Huynh
Two Park Avenue
New York, NY  10016
(212) 592-1400
(212) 592-1500
sselbst@herrick.com
hhuynh@herrick.com